Good morning. May it please the Court, Joseph Seguenza for Petitioner. The issue that Petitioner presents to the Court for consideration this morning is whether minor immaterial inconsistencies or discrepancies between Petitioner's testimony and other evidence or lack of evidence in the record can be the basis for an adverse credibility finding, as the IJA had so found in this case. Petitioner's submission to the Court this morning is that minor immaterial inconsistencies that do not go to the heart of an asylum claim, either standing alone or cumulatively, cannot be substantial evidence and cannot form the basis for an adverse credibility finding. It should be noted at the outset that at AR 60, the IJA found Petitioner's testimony generally credible and consistent with his declaration, except for several points that the IJA articulated in his decision. It's Petitioner's position that these inconsistencies were, in fact, not inconsistencies, that there was sufficient explanation for any apparent discrepancies between the testimony and the record, the evidence and the record. And even assuming arguendo that they were deemed inconsistencies, Petitioner submits that they were minor. They were inconsequential, insignificant, and cannot be compounded or accumulated to constitute an adverse credibility finding. It's also of note that the IJA had found that each of these inconsistencies that he pointed out in the record, by themselves, standing alone, he felt were minor, and they weren't material enough to go to the heart of the asylum claim. But the IJA, in his discretion, accumulated, if you will, these minor inconsistencies to form the basis for an adverse credibility finding. At AR 60, the IJA found or established that the Petitioner was, in fact, a member of two political organizations in India, and that he was knowledgeable about the organizations and about his involvement, claimed involvement, with these organizations in his home country. In order to constitute substantial evidence for adverse credibility finding, it's my understanding that, based on Ninth Circuit precedent, that there must be a legal articulable basis and specific cogent reasons given for each finding of adverse credibility, which we believe was not done by the IJA in this particular case. The IJA had commented that there was a lack of corroborating evidence in the record. The Petitioner submits that there was sufficient corroborating evidence in the record. Among other things, 12 items submitted in support of his application, and these documents included affidavits from a village, Sarpanch, and affidavits or, excuse me, documents establishing or proving that he was, in fact, a member of these two political organizations and was involved actively on behalf of the organizations. If I may just, for a couple of minutes, just address briefly a couple of the concerns that the IJA had in raising inconsistencies on the record. The first is at AR 57. Whether or not a bribe was paid to secure Petitioner's release from his first arrest, the Petitioner rather sufficiently explained this concern to the IJA. He testified that he had no knowledge that a bribe was paid. I believe in his declaration he stated that he did not know whether a bribe was paid, and an affidavit from the village, Sarpanch, referred to the matter of a bribe being paid. We submit that Petitioner sufficiently explained this discrepancy by stating that he had no knowledge of whether a bribe was paid, and it's of interest to note that at AR 305, in Petitioner's declaration, he alludes to the fact that there was another person in his same village who went by the same name, and the village, Sarpanch, might have confused that gentleman with the fact that a bribe was paid for him, as opposed to Petitioner's particular case. The second reference would be at AR 58, which particular police unit arrested Petitioner, I believe for his first arrest, and at, excuse me, which, whether the Makoo, M-A-K-O-O, or Dharmkot, D-H-A-R-M-K-O-T, unit had arrested Petitioner. Again, Petitioner explains sufficiently that he was first taken to the Makoo station, and then subsequently taken to the Dharmkot station. These two discrepancies that were raised by the IJ we submit, along with the others that were mentioned in the record, are not material. They're minor inconsequential inconsistencies that don't go to the heart of his claim. What is the heart of his claim, and that was sufficiently established on the record, is that Petitioner was politically involved, that he was arrested because of his political involvement, that he was beaten and tortured at the hands of the police, he suffered injury, and thus established sufficient evidence on the record to prove past persecution and a presumption of well-founded fear of future persecution. Just one other reference, if I may, on the record. At AR 203, the IJ raised concerns whether Petitioner has sufficiently explained where he was picked up when he was first arrested, whether he was at home or at the temple, as I believe the Sarpanch affidavit had alluded to. Again, Petitioner sufficiently explains to the Court that he had spoken at the Gurdwara that day, the temple, at an organized meeting, and then later on that afternoon, or later on that day, rather, had been arrested at home. The IJ, we submit, engaged in speculation as to whether or not Respondent should have known through the Sarpanch affidavit where he was arrested or picked up, but we submit that Respondent, or Petitioner, rather, sufficiently explained where he was when he was arrested. The key, again, here, for this minor inconsistency, rather, is that he was arrested, and that has not been rebutted. And the fact that he was arrested and he provided well-detailed accounts of his arrests and his treatment of the police at the hands of the police were not rebutted by any contrary evidence. There should be a presumption that he is credible. I don't believe that the IJ had made any specific finding on demeanor and generally found him credible. And if he is found credible and it's not rebutted, it's Petitioner's submission that he has to be presumed to be credible, unless there is contrary evidence in the record which we submit was not present. Petitioner's main points to make to the Court this morning, and reserving my final two minutes if I may, is that minor inconsistencies stay minor, that they cannot be accumulated or compounded to form the basis of an adverse credibility finding. And they are minor, and they are inconsequential, and they are of no significance. They don't go to the heart of Petitioner's asylum claim. All the inconsistencies that were raised by the IJ are, in fact, minor, and they stay minor. They cannot be aggregated, if you will, to form the basis for an adverse credibility finding. And if I may reserve the last two minutes. Thank you. Thank you. Good morning, members of the Court. Paul Furiano for the Attorney General. Government would disagree that the inconsistencies in the evidence are minor. We say that they are not minor, that they are substantial, and they do go to the heart of his claim. As we pointed out in our brief, there are nine such inconsistencies. Now, a couple of these, the IJ pretty much discounted and didn't give much weight to. But some he did. He did not unequivocally find that the Petitioner was credible, although he does say that his testimony was generally credible. That doesn't mean that he believed everything that the Petitioner said. It's a very odd IJ opinion. Maybe it's a more honest reaction you might give. But he found that the generally credible, he said individually these might not be sufficient. But cumulatively, it cast doubt on claims that went to the heart of it and what he felt the heart of the claim. But from taking it, what I interpret that to mean, and you seem to draw a different conclusion, is that these were individually inconsequential and did not go to the heart of the claim. Well, I don't think he did. He didn't make that finding with respect to every single one of them. He did mention that with respect to, I believe, his age and the year that he joined the All India Student Seek Federation. He said specifically this is inconsequential. But he didn't say each, I don't think he specifically said each and every one of these is inconsequential. But we would submit that they are. Well, let me put my question another way. Which of the claims do you think, the alleged inconsistencies, do you think individually go to the heart of the claim? I would say that the inconsistency, well, the third one that we cite in our brief, in his declaration he states that there is no reason given for his arrest, whereas he testified that they told his parents why he was being arrested. Now, the motivation for his arrest goes very much to the heart of his claim. It's the essence of his claim. It's not a minor inconsistency like what color pants the police were wearing. But it goes to the very nature, a very central event, a key motivation, which is the heart of his asylum claim. And it was inconsistent. The fourth inconsistency with respect to whether he was beaten with a stick in his declaration, or he testified that he was beaten with a belt. Again, this is the infliction of alleged persecution. This goes very much to the heart of his claim. It's not minor and inconsequential. Why is that so? I mean, how much difference does it make whether he's beaten with a stick or with a belt? Well, for the purposes of determining his credibility, I mean, we would submit that, yes, you know, being beaten by a stick or a belt, either way it's persecution. That's not the issue. The issue is whether he's telling the truth, whether you can believe him. And you would expect, with respect to a heinous act like that, that one would be consistent in relating that. So that's the issue here. I understood he said that he was... There's no inconsistency here at all anyway. Yeah. What are you depending on to show the inconsistency? What's inconsistent with what? Well, in his declaration, he alleges that he was beaten with a stick. In his testimony, he alleges he was beaten with a leather belt and a stick in his declaration. Well, again, it's not the same. He didn't say that in his testimony. I understood he said at one point he was beaten with a belt and stick, and another place with a belt and a baton. And it seems to me the question is, is a stick a synonym for a baton? If there's any inconsistency, I mean, that's pretty minor, isn't it? It could be, but we submit that it's there nonetheless. It is. But it's not the only one, Your Honor. The fifth inconsistency that we cite is testimony that he was arrested at home. And the sarpanch said that he was arrested in a gurdwara. Now, again, he did attempt to explain that, but it was there. The sixth inconsistency that we cite. I don't think that's inconsistent either. What I took the testimony to be is that he was arrested after the raid on the temple. And the fact that he was arrested at home doesn't necessarily – isn't necessarily inconsistent with that, is it? Well, not necessarily. But what I think the IJ did was he decided that he wasn't going to give much weight to the affidavit of the sarpanch. What does the sarpanch say? He actually doesn't say he was arrested at the temple, does he? Not specifically, no. Right. So there is no – No inconsistency. There's no specific inconsistency. I mean, he's nitpicking all these things. Well, there – Or is the inconsistency? When he testified that no bribe was paid to secure his relief and the sarpanch said that, yes, a bribe was paid, that's inconsistent. When he – he – the eighth inconsistency that we cite with regard to his first arrest, he said that no one else was present when he was arrested. Then later on, he testifies that two other people were present. That's – there's no explanation for that. That goes to the heart of his claim. It's an inconsistency. It's in the record. It goes to the heart of his claim. And the issue is whether – does evidence in the record compel a contrary conclusion? Well, that – but that one, it looks to me, is that he didn't understand the question because his lawyers ask him whether others in his group were arrested the same day, and he gives names of three people who were also arrested that day. And it doesn't seem to me like that's an inconsistency, which is sort of a – I mean, the record, it looked to me as though he just didn't understand the question. Well, we would – we would submit that – he was asked so many times, it would have been clear, when you were arrested, was anybody else arrested with you? Right. So the question is, was anybody arrested that day? Because if they were, they might not have been in the same place, or arrested in the immediate vicinity. In other words, there are three of you together, you're all arrested. Well, it's – you know, it is possible, as I said, to look upon this with a different perspective. But that doesn't end the inquiry. In other words, is it possible that he didn't understand the question? Yes. But the issue before the court is, does the evidence in this record compel a reversal? Well, the other – I guess the question is, are these – do the inconsistencies – are they explainable in the record, or are they true inconsistencies? And do they go to the heart of the claim? Now, I think the first one that you discussed may well go to the heart of the claim, but many of these others, for example, the bribes and the location of the arrests, it seems explainable. But the bribes, which may – there was an inconsistency, doesn't seem to go to the heart of the claim to me. Well, I – I'm just offering that as so you can respond, because you may – Well, the heart of his claim is what happened to him, and why it happened. Right. The fact that he was arrested and how he got out, that goes to a crucial event. That's why we say it goes to the heart of his claim. Now, we would submit that it's a heck of a lot more central to his claim than would be what the weather was like that day. I guess there's different degrees of it. Sure. But putting all of the credibility aside, burden of proof, did the petitioner meet his burden of proof with corroboration of certain specific events? In other words, notwithstanding the credibility determination, the I.J. was nonetheless correct in finding that the petitioner hadn't met his burden of proof. First of all, you can't rely on his testimony because it wasn't consistent enough and direct enough and detailed enough to stand on its own. And so we don't think that there's been any error in the I.J. saying, well, you know, your testimony's not enough in this case. I want some corroboration. But there was not with respect to a very key event, the murder of Basant Singh, who was, I guess, a friend of the petitioner. There's a lot of evidence in the record about other events that happened to other Sikh activists. Allegedly, not by law, but in the newspaper, murders happening outside bombings. The alleged murder of Basant Singh was supposed to have been a very public event. It wasn't corroborated. The I.J. decided, well, I want more evidence. It's not here. I don't think you've met your burden of proof. With respect to the medical treatment that he alleges he got in two instances, there's no evidence in the record that it was impossible for him to get that. Given the weaknesses in his testimony, though maybe not in every respect sufficient for an adverse credibility determination, given the inherent problems and weaknesses and vagaries in his testimony, the fact that he needed corroboration and didn't provide it would sustain the I.J.'s decision in this case. Just to sum up, I see that I'm out of time. We would submit that the record supports  The record would also support a finding that notwithstanding the adverse credibility determination, there's weaknesses enough in his evidence to require corroboration. He didn't provide the corroboration for key events. And on this basis, it was not air for the I.J. to deny asylum. The record does not compel a contrary conclusion. Thank you. Thank you, Mr. Fiorino. Ruben?  if I could just address a couple of the concerns the government counsel had raised. With respect to the medical evidence and the lack of corroborating documentation, Petitioner submits generally, as per Ninth Circuit precedent, that corroborating documents or evidence is not necessarily needed if Petitioner's testimony is detailed, consistent, and plausible. We submit that it is in this case. It's significant to note that there's no inquiry on the record as to whether or not these documents were, in fact, obtainable or whether they were available or the person who treated Petitioner, whether he or she was available to provide a letter or other documentation concerning the injuries. The record is silent on that. It's of interest to note also that, I think it's at AR 105, that in his declaration, Petitioner stated that the person who treated him treated him with herbal remedies and that he was not a medical doctor. With respect to the other inconsistencies that the Court has addressed today, again, these are just minor inconsistencies and they don't go to the heart of the asylum claim. But what about the inconsistency about whether he was told why he was being arrested? I believe that Petitioner sufficiently explained that, Your Honor. His declaration, I believe, states that he was not told by the police why he was arrested. And then on cross-examination, he admitted or conceded that the police did tell his parents why he had been arrested. I believe that the I.J. engaged in some speculation there by lumping in, so to speak, the parents as persons that Petitioner was referencing in his declaration, when in fact he wasn't. If you read through this, it seems to me that the I.J. more or less looked at this... It's almost a demeanor analysis because he said, well, I think he's generally credible, but for all these reasons, I just don't believe him, and mentions demeanor. How are we supposed to evaluate that? I believe, frankly, I believe that the I.J. went out of his way. As the Court has seen numerous decisions in the past from I.J.s, this particular decision goes out of its way to comment that he found that the I.J. found the Petitioner generally credible. What does that mean? We submit that it means that if there's a presumption of credibility if there's no adverse credibility finding specifically made on the record. We submit it wasn't made on the record here because the inconsistencies were in fact just minor. They didn't go to the heart of the claim. They cannot be considered significant or material enough to deny Petitioner his claims for relief. Okay, Mr. Glenza. Thank you. This case is submitted for decision. The last case on today's calendar we will stand in adjournment for the day. Beep. Thank you, sir. Thank you, sir. All right. All right. Beep. Beep. Beep.
judges: Tashima, Thomas, Silverman